IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | |
| VARUN BHATT, | : | CIVIL ACTION NO. |
| | : | 1:14-CR-313-AT |
| Defendant. | : | |

## **ORDER**

Presently before the Court is the Magistrate Judge's Report and Recommendation ("R&R") [Doc. 40] recommending the denial of Defendant's Motion to Suppress Statements [Docs. 11, 30].[1]  The Defendant has filed objections to the Magistrate Judge's R&R that challenge the Magistrate Judge's mixed factual and legal findings that Defendant Varun Bhatt was not subject to coercion and de-facto arrest by the team of government agents[2] investigating his

---

[1] The Defendant's request for a Jackson-Deno voluntariness hearing was granted, as the Magistrate Judge proceeded to consider the Defendant's motion after conducting a full evidentiary hearing on May 19, 2015.  (Doc. 29.)  In the event the Defendant wishes to testify prior to the Government's presentation of evidence at trial outside the presence of the jury regarding the voluntariness of his self-incriminating statements or confession, the Court will additionally afford the Defendant the opportunity to make such a request.

[2] A team of approximately twelve or thirteen law enforcement officials from the FBI, the Department of Homeland Security ("DHS") and the local police force arrived at the Defendant's home to execute a search warrant on May 30. 2014 at approximately 6:30 a.m.  The Government's interview of Defendant was conducted by two to three agents over the course of almost three hours within a half hour of the sweep of the house.

offense conduct, and that the statements he provided to government agents was voluntarily provided.  [Doc. 42.]

A district judge has broad discretion to accept, reject, or modify a magistrate judge's proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 680 (1980).  Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the R&R that is the subject of a proper objection on a *de novo* basis and any non-objected portion on a "clearly erroneous" standard.  As the Defendant objected on numerous substantive grounds to the Magistrate Judge's Report and Recommendation in a well argued brief, the Court has reviewed the record and pending motions in this case on a *de novo* basis

After an independent *de novo* review of the record, the Court finds that the Magistrate Judge's thorough factual and legal analysis in the R&R and recommendation that Defendant's motion be denied is correct.[3]  That said, the Court must express its strong concern that the search and interrogation methods used in this case barely fall within the borders of what is legally acceptable, particularly with respect to the voluntariness of the Defendant's statements.

Twelve to thirteen agents armed in tactical gear arrived at Defendant Bhatt's doorstep at the crack of dawn, with some agents displaying their weapons, to conduct an investigatory search and related interrogations.  Defendant and his family members were asleep when the law enforcement team arrived at their

---

[3]  The Court, however, notes that the Magistrate Judge erroneously commented that Defendant failed to file a reply brief to the Government's opposition to the Defendant's motion to suppress. Defendant properly states that he did file a reply brief upon inquiry from the court.

doorstep and began loudly knocking on the door. (Doc. 29 at 11.) They clearly were implementing a "shock and awe" strategy to obtain the maximum information feasible in connection with an investigatory search. The Defendant and his father were handcuffed at the onset of the search for ten to fifteen minutes while their wives stood by outside[4] and the house was cleared. In the words of Agent Ford, Defendant's wife and mother stood outside "very confused . . . . a little agitated . . . . surprised in general that we were there and scared for the children that were still in the house." (*Id.* at 58.) Both Defendant and his father were solely wearing boxers, because they had just been woken from sleep. Within 27 minutes of the agents knocking on the door, they proceeded to interrogate Defendant and his father separately, without providing them an opportunity to clothe. The interview of Defendant took place on the house porch and lasted all told almost three hours, including two short breaks. The entire search and interrogation process lasted almost four hours. The agents never told Mr. Bhatt that he was free to leave the home and choose not to be interviewed. They never told him they could accompany him to his bedroom so he could properly clothe himself.[5] The agents tag teamed Bhatt's interrogation by adding the lead investigator, Mr. Ashley, to the two-person interrogation team for the last segment of the interrogation that lasted approximately 50 minutes. As soon as

---

[4] The Defendant's children remained sleeping in a bedroom.
[5] The agents never asked if the Defendant wanted to obtain his clothes (or shoes) or offered to accompany him to his bedroom to obtain his clothes. Although Defendant did not specifically request to obtain his clothes, this is quite understandable given the agents' request to proceed with the interviews directly after he had been released from having been placed in handcuffs outside his home.

3

Agent Ashley began this last interrogation segment, he tackled the relative lack of progress in the other agents' interview of Mr. Bhatt and efforts to obtain a full confession. Thus, he repeatedly urged to Bhatt to provide full disclosure and stated that cooperation would be to his benefit in obtaining favorable treatment from the U.S. Attorney's office. Further, he advised Bhatt that if he failed to cooperate, that Ashley would tell the U.S. Attorney of his lack of cooperation and that this would impact the decision to prosecute and how to handle the case. (Doc. 45-1 at 82-96.) Agent Ashley also stated that he would be giving Bhatt the *only* opportunity he would have to communicate with the judge in the case early on via transmission of a letter because Bhatt would not have such an opportunity until he later saw the judge face to face in open court. (*Id.* at 82-83.) Agent Ashley assured Bhatt that he could give him the opportunity to write a letter to the judge right then, expressing remorse that would be helpful to his position. After Ashley had proceeded down this line of representations for at least several minutes, Bhatt finally said told Agent Ashley he wanted "to help." (*Id.* at 83, 96.)

Among the cases relied upon by the Magistrate Judge where no Miranda warning was provided, *United States v. Peck*, 17 F. Supp. 3rd 1345 (N.D. Ga. 2014) (decided by the undersigned judge) is closest to the factual circumstances presented in this case. (See R&R, Doc. 40, at 20-21.) First, the defendants in both cases were told they were not under arrest and were interviewed regarding child pornography offenses at their homes. Although *Peck* involved many additional similar facts -- including the initiation of the search warrant with a

4

large team of agents and the agents' interview of the defendant while in night clothes -- there are some notable distinctions between the cases. Peck was wearing a bathrobe over his underwear, rather his underwear only. While Peck's hands were pulled behind his back, he never was placed in handcuffs as Bhatt was. The agents in *Peck* told the defendant multiple times he was free to leave, and their interview of Peck lasted only 43 minutes, as opposed to the 2 hours and 45 minutes in this case. Finally, the agents did not proceed to arrest Peck, while the agents here concluded the search and interview process with a decision to pursue Defendant's arrest, which occurred later that day. Still, as in *Peck*, the agents in the instant case conducted the interview in an entirely civil and professional tone of voice, they did not make any threats of violence or engage in such acts,[6] and no guns were drawn after the initial execution of the search warrant at the front door.

The question the Court focuses on here is whether the additional circumstances involved in this case render Bhatt's interview involuntary.[7] Voluntariness of statements is analyzed similarly to voluntariness of the Miranda waiver. As summarized by the Eleventh Circuit,

---

[6] The Court has listened to the interview.

[7] As noted by Judge Batten in another pornography search case, even where the Court determines that a defendant's statements were not taken in violation of Miranda, the [C]ourt still must determine that any confessions or incriminatory statements made by [Graham] were voluntary in order to admit them at trial. *United States v. Lazarus*, No. 12–16287, 2014 WL 104212, at *3 (11th Cir. Jan.13, 2014) (per curiam) (unpublished) (citing *United States v. Bernal—Benitez*, 594 F.3d 1303, 1317–18 (11th Cir.2010). *United States v. Graham*, No. 3:13-CR-11-TCB, 2014 WL 2922388, at *8 (N.D. Ga. June 27, 2014), *appeal dismissed* (Mar. 23, 2015).

> The focus of the voluntariness inquiry is on whether the defendant was coerced by the government into making the statement: "The relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception." *Colorado v. Connelly*, 479 U.S. 157, 170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986) (citation omitted). The district court must consider the totality of the circumstances in assessing whether police conduct was "causally related" to the confession. *Miller*, 838 F.2d at 1536. Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession. See *Colorado*, 479 U.S. at 163 n. 1, 107 S.Ct. at 520 n. 1; *Miller*, 838 F.2d at 1536; *United States v. Castaneda–Castaneda*, 729 F.2d 1360, 1362–63 (11th Cir.1984). Isolated incidents of police deception, see *Castaneda–Castaneda* 729 F.2d at 1362–63; *Frazier v. Cupp*, 394 U.S. 731, 739, 89 S.Ct. 1420, 1424–25, 22 L.Ed.2d 684 (1969), and discussions of realistic penalties for cooperative and non-cooperative defendants, see *United States v. Nash*, 910 F.2d 749, 753 (11th Cir.1990), are normally insufficient to preclude free choice.

*United States v. Mendoza-Cecelia*, 963 F.2d 1467, 1475 (11th Cir. 1992), *cert. denied*, 506 U.S. 964 (1992).

Among the factors the Court should consider are the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *U.S. v. Gonzalez*, 71 F.3d 819, 828 (11th Cir. 1996). However, while the Eleventh Circuit has "enumerated a number of (non-exclusive) factors that may bear on the issue of voluntariness, the absence of official coercion is a sine qua non of effective consent . . . ." *United States v. Gonzalez*, 71 F.3d 819, 828 (11th Cir. 1996) (citations omitted). See generally *United States v. Thompson*, 422 F.3d 1285, 1295-96 (11th Cir. 2005). The psychological impact of the course of questioning

6

should be considered among the many factors that the Court must evaluate when reviewing the specific factual circumstances of the case. *Schneckloth*, 412 U.S. at 226 ("In all of these cases, the Court determined the factual circumstances surrounding the confession, assessed the psychological impact on the accused, and evaluated the legal significance of how the accused reacted.")  And the "government bears the burden of proving ... that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily." *United States v. Hidalgo*, 7 F.3d 1566, 1571 (11th Cir.1993) (quoting *United States v. Blake*, 888 F.2d 795, 798 (11th Cir.1989)).

When the Court evaluates these factors, including Defendant's professional background, his age and the circumstances of the search and interrogation, it ultimately reaches the same conclusion made by the Magistrate Judge.  However, the Court remains more concerned about the collective impact of the variety of tactics used in this case to place coercive psychological pressure on Bhatt.  These include:  (1) the "shock and awe" intrusive dawn wake-up arrival delivered by a troop of twelve to thirteen armed law enforcement officers; (2) the lead agents' (who included a female agent) obvious intentional undermining of Defendant's sense of independence and orientation, by virtue of their proceeding to interview Bhatt for hours on end after while in his boxers, just after he had been abruptly woken by their team; (3) the agents' failure to make clear that Defendant was free to leave and not submit to an interview; (4) Agent Ashley's extended and somewhat strained representations regarding the benefits of cooperation and the

risks of prosecution as well as his capacity to assist Defendant in communicating with the judge on the case via a letter; and (5) the length of the interrogation that was conducted for hours immediately following the Defendant's being woken and placed in handcuffs initially.

In assessing Agent Ashley's statements to Bhatt regarding the benefits of his cooperation, the Court first notes that while his statements about the benefits of cooperation were generally true, Agent Ashley went further than that by making representations regarding how Defendant's written statement of remorse would be relayed to the judge -- implicitly on an early basis.  He additionally might be viewed as having made an implicit threat by representing that Defendant's non-cooperation would be relayed to the prosecutor and such non-cooperation in effect would likely result in prosecution.  Nevertheless, as noted above, Eleventh Circuit law remains clear that the isolated representations of a law enforcement officer who encourages cooperation with the government and indicates the adverse consequences of non-cooperation will not alone be deemed an illegal inducement that overwhelms the defendant's ability to freely and voluntarily make a statement.  *Mendoza*, 963 F.2d at 1475.[8]   See also, *U.S. v. Nash*, 910 F.2d 749, 752 (11th Cir. 1990) ("telling the [defendant] in a non-coercive manner of the realistically expected penalties and encouraging [him] to tell the truth is no more than affording [him] the chance to make an informed

---

[8] The Court notes, though, that in *Mendoza*, the defendant had been read his *Miranda* rights.

decision with respect to [his] cooperation with the government," citing *United States v. Ballard*, 586 F.2d 1060, 1063 (5th Cir.1978)).

While the Court finds Agent Ashley went overboard in his statements, he did not deliver these in a coercive manner. Nor was Bhatt's interview as a whole conducted in an overtly threatening manner by the agents. The Court therefore concurs with the Magistrate Judge's finding that the Defendant's statement here was given on a voluntary basis in view of applicable law, but it views the agents' conduct of the interview as part of a pattern of pushing the limits.  The Court remains deeply disturbed by the coercive power dynamics created by the officers' lengthy interview of the Defendant while he vulnerably stood in his boxers for hours after the shock of being woken by a large team of armed officers. These tactics, tolerated in *Peck* but expanded still further here, will not likely be approved by this judge if stretched any further.  However, for the reasons stated, the Court **OVERRULES** Defendant's objections [Doc. 42]; **ADOPTS** the Magistrate Judge's R&R [Doc. 40]; and **DENIES** Defendant's Motion to Suppress [Docs. 11, 30].

Trial in this action is hereby **SET** for March 21, 2016, at 9:30 AM in Courtroom 2308.  The pretrial conference is set for March 15, 2016, at 10:30 AM. By 3:00 PM on March 1, 2016, the parties are to file the following: motions in limine and proposed voir dire questions. By 3:00 PM on March 1, 2016, the Government must file a brief summary of the indictment that the parties can rely

on for voir dire. By 3:00 PM on March 9, 2016, the parties are to file any objections to those items listed above.

The Court has received and approves the petition for leave of absence for defense counsel Esther Panitch for the dates of February 12, 2016, and February 25-26, 2016 [Doc. 46]. Excludable time is allowed to run until the start of trial pursuant to 18 U.S.C. § 3161 (h)(7)(A) and (B)(iv) (to give counsel for the defendant and attorney for the Government reasonable time necessary for effective preparation). The Court finds that the ends of justice served outweigh the best interest of the public and the defendant in a speedy trial.

**IT IS SO ORDERED** this 9th day of February, 2016.

_____
**Amy Totenberg
United States District Judge**